**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**GARY R.,**

                       **Plaintiff,**

**v.**
                                                    **20-CV-6490**

**COMMISSIONER OF SOCIAL SECURITY,**

                       **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 14. Gary R. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 12, 13. For the following reasons, Plaintiff's motion (Dkt. No. 12) is granted, and the Commissioner's motion (Dkt. No. 13) is denied.

## BACKGROUND

On August 26, 2016, Plaintiff filed for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") alleging disability beginning on April 30, 2014, due to bipolar disorder, major depression, personality disorder, and anxiety, and other physical

restrictions.  Tr. at 237, 241.[1]  Plaintiff's claim was denied at the initial level and he requested review.  Administrative Law Judge Connor O'Brien ("the ALJ") conducted a hearing on February 25, 2019.  Tr. at 29-93.  Plaintiff, who was represented by counsel, testified as did a vocational expert ("VE").  Tr. at 29-93.  On March 29, 2019, the ALJ issued a decision in which he found that Plaintiff was not under a disability as defined by the Act from April 30, 2014, through the date of his decision, and therefore, was not entitled to benefits.  Tr. at 12-28.  The Appeals Counsel denied Plaintiff's request for review making the ALJ's decision final.  Tr. at 1-6.  This action followed.

## **LEGAL STANDARD**

**Disability Determination**

A person making a claim for Social Security benefits bears the ultimate burden of proving disability throughout the period for which benefits are sought.  *See* 20 C.F.R. § 416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982).  The claimant is disabled only if he shows that he is unable to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909; *see Barnhart v. Walton*, 535 U.S. 212, 216-22 (2002).

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 11.

A disabling physical or mental impairment is an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). To establish disability, a claimant must "furnish such medical and other evidence of the existence [of disability] as the Commissioner of Social Security may require." 42 U.S.C. § 1382c(a)(3)(H)(i). The function of deciding whether a person is under a disability within the meaning of the Act belongs to the Commissioner. 20 C.F.R. § 416.927(e)(1); *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997).

The Commissioner has established a five-step sequential evaluation for adjudicating disability claims set forth at 20 C.F.R. § 416.920. The claimant has the burden at the first four steps. The Commissioner has the burden at the fifth step of demonstrating that the claimant can perform other work existing in significant numbers in the national economy, but the burden of proving disability is always on the claimant. *See* 20 C.F.R. § 416.920; *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (stating that "[t]he claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's

review to two inquiries:  whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).  Substantial evidence is "more than a mere scintilla." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (emphasis added and citation omitted).  The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard.  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position.  *See Perez v. Chater*, 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## **DISCUSSION AND ANALYSIS**

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process. *Lynch v. Astrue*, No. 07-CV-249-JTC, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 30, 2014, the alleged onset date.  Tr. at 17.  The ALJ concluded at step two that Plaintiff's degenerative joint disease of the hip, right arm, and hand; bipolar disorder; personality disorder; and anxiety were severe impairments.  Tr. at 17.  At step three, he concluded that Plaintiff did not have an impairment or combination of impairments which met or equaled the Listings.  Tr. at 18-19.

The ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with the following limitations:  He cannot climb a rope, ladder, or scaffold; cannot balance on narrow, slippery or moving surfaces.  He can tolerate only occasional exposure to extreme cold, extreme heat, wetness, humidity, and air borne irritants.  He can perform simple and detailed tasks, but not complex ones.  He can adjust to occasional changes in work setting and make work-related decisions.  He cannot interact with the public and cannot perform tandem or teamwork.  He can maintain a regular pace and regular schedule.  He can work in moderate noise as defined in the Dictionary of Occupational Titles (office, grocery, light traffic). Dkt. No. 19.

The ALJ found that Plaintiff was unable to perform his past relevant work as a vending machine attendant, driver, resident supervisor, cashier checker, protection officer, guard chief, and front desk clerk.  Tr. at 22-23.  Relying on the VE's testimony, the ALJ found at step five that Plaintiff could perform work existing in significant numbers in the national economy, including work as a housekeeper, mail clerk, and checker.  Tr. at 23-24.  Accordingly, the ALJ determined that Plaintiff had not been under a disability since April 30, 2014, his alleged onset date.  Tr. at 24.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 12, 13.  Among other things, Plaintiff argues that the ALJ failed to properly develop the record relating to his bipolar disorder, personality disorder, and anxiety.  Specifically, Plaintiff contends that before deciding Plaintiff's mental RFC, the ALJ should have obtained his records from the PROS Program,[2] which Plaintiff attended as often as five days a week at various points throughout his treatment.  Tr. at 424.  Given the apparent severity of Plaintiff's mental issues, this Court agrees that it was erroneous for the ALJ to make a disability determination without the benefit of these records.

---

[2] The Personalized Recovery Oriented Services ("PROS"), program is a comprehensive model that integrates rehabilitation, treatment, and support services for individuals with serious mental illnesses, with a goal of promoting independence and improving quality of life through, *inter alia*, social and basic life skills training, problem solving and coping skills, housing assistance, vocational training, clinical counseling, health assessment, symptom monitoring, and medication management. www.omh.ny.gov

This Court notes that numerous practitioners opined on Plaintiff's mental ability to perform certain work functions during the relevant period but found varying degrees of limitation. For example, on February 15, 2017, and July 21, 2017, Licensed Clinical Social Worker Eileen Appleton provided a psychological assessment for the determination of employability. Tr. at 555-562. She opined that Plaintiff was "moderately limited" in following, understanding, and remembering simple instructions and directions; performing simple and complex tasks independently; maintaining attention and concentration for rote tasks; and performing low stress and simple tasks. Tr. at 557. On February 15, 2017, she opined that Plaintiff's limitations would last four months, and on July 21, 2017, she stated that he would be limited in this manner for six months. Tr. at 557, 562.

On April 2, 2018, Plaintiff's treatment team of Emily Lehman and Maria Hall completed a psychological assessment for the determination of employability. Tr. at 551-54. They believed Plaintiff was "very limited" in following, understanding, and remembering simple instructions and directions. Tr. at 553. He would be "moderately limited" in maintaining attention and concentration for rote tasks and performing low stress and simple tasks. Tr. at 553. They continued that Plaintiff could work only 20 hours per week based on his "limited capacity due to mental health concerns." Tr. at 553.

On December 11, 2018, Licensed Mental Health Counselor John Finn provided a psychological assessment for determination of employability.  Tr. at 547-50.  Plaintiff's presentation at that time included anhedonia, passive suicidal ideation, impulsive emotional reactions, negative thought processes, and worry.  Tr. at 547.  Mr. Finn believed Plaintiff was "moderately limited" in maintaining attention and concentration for rote tasks.  Tr. at 549.  He believed Plaintiff could work only ten hours per week with reasonable accommodations for three months.  Tr. at 549.  He could work less than forty hours due to his treatment schedule and symptom severity.  Tr. at 549.  Mr. Finn believed Plaintiff would need a "supportive" and "quiet" environment in which to work, and that he could not work around crowds or at a "fast pace."  Tr. at 550.

On January 25, 2019, Dr. Satyrath Sarakanti provided a mental residual functional capacity.  Tr. at 569-73.  Plaintiff attended outpatient groups two to three times per day, two days per week, and participated in monthly therapy sessions and quarterly psychiatrist appointments.  Tr. at 569.  Plaintiff was diagnosed with bipolar disorder, generalized anxiety, and borderline personality disorder.  Tr. at 569.  Plaintiff's response to treatment had been "fair."  Tr. at 569.  His symptoms at that time were worsening, and his medication and treatment engagement were both increased.  Tr. at 569.  Dr. Sarakanti believed Plaintiff was "seriously limited" in maintaining regular attendance and being punctual within customary, usually strict tolerances; completing a normal workday or workweek without interruptions from psychologically based symptoms; getting along with coworkers or peers without unduly distracting them or

exhibiting behavioral extremes; and responding appropriately to changes in a normal work setting.  Tr. at 571.

Dr. Sarakanti explained:  "[Plaintiff] experiences difficulty maintaining consistent engagement due to depressive symptoms. Anxiety and low self-esteem produce impulsive behaviors which affect interpersonal dynamics, and change in routine and expectations, especially 'on the fly' is difficult."  Tr. at 571.  Dr. Sarakanti opined that Plaintiff was "seriously limited" in interacting appropriately with the general public and maintaining socially appropriate behavior.  Tr. at 572.  "[Plaintiff] struggles with distress tolerance and emotional regulation when experiencing stress…Impulsivity and anxiety have created a pattern of maladaptive behaviors in interpersonal settings, including 'blurting' inappropriate statements and not being mindful of personal boundaries."  Tr. at 572.  She believed Plaintiff would miss about three days per month due to impairments or treatment.  Tr. at 573.

**Plaintiff's Treatment**

To address some of his maladaptive behaviors, Plaintiff was admitted to the Unity PROS program in August 2015.  Tr. at 288.  The attending physician at that time was Dr. Sarakanti who diagnosed Plaintiff with anxiety disorder, bipolar disorder, and personality disorder.  Tr. at 288.  On April 26, 2016, Dr. Sarakanti identified Plaintiff's symptoms as depression, anxiety, impulsivity, and manic symptoms, which the doctor considered barriers to Plaintiff's interpersonal relationships and his ability to perform in a work setting.  Tr. at 290.  In June 2016, Plaintiff's medications included

Effexor, Lithium, and Paxil.  Tr. at 288.  Dr. Sarakanti noted on October 5, 2016 that Plaintiff appeared somewhat restless and reported increased problems with anger, impulsivity, and daily gambling.  Tr. at 415.  Abilify was added for his bipolar disorder.  Tr. at 417.

On January 31, 2017, Plaintiff's mood was stable but he was having side effects from his medication including dry mouth and memory problems.  Tr. at 419.  On mental status exam, Plaintiff had recent memory impairment and worsening concentration/attention.  Tr. at 421.  On April 25, 2017, Dr. Sarakanti noted that Plaintiff attended the PROS program five days a week.  Tr. at 424.  Plaintiff felt less depressed, but he reported feeling anxious and suffering from memory problems.  Tr. at 424.  He was continued on Abilify, benztropine, Ativan, and Lithium.  Tr. at 433.

Plaintiff continued to report feelings of depression to Dr. Sarakanti throughout 2017.  Tr. at 435, 441.  On examination, Plaintiff's mood was depressed and anxious, his affect was constricted and blunt, his recent memory was impaired, and his concentration/attention was only fair.  Tr. at 442.  In 2018, Plaintiff reported to Dr. Sarakanti that had been more irritable and impulsive, that he was "blurting out words," and making racial remarks which he feared would get him in trouble with people.  Tr. at 450.

Plaintiff underwent a psychiatric evaluation with Dr. Stephanie Beneski-Barlow in April 2018.  Tr. at 400.  Plaintiff had a history of bipolar disorder, depression, and cluster B traits (narcissistic/borderline).  Tr. at 400.  Plaintiff reported that he had a positive experience in the PROS program for three past years.  Tr. at 400.  At the same time, he reported constant problems dealing with interpersonal conflict, feeling lonely, and acting impulsively.  Tr. at 400.  He reported wanting to say "nasty things" to others and having problems with relationships with females.  Tr. at 400.

Plaintiff subsequently underwent a psychosocial evaluation with Mrs. Appleton to reengage at PROS to "work intensively on vocational goals and to continue to work on building social supports."  Tr. at 482.  Plaintiff's mood was somewhat irritable and he made some sarcastic statements.  Tr. at 482.  Plaintiff was to attend three days a week.  Tr. at 487.  Plaintiff returned to Dr. Sarakanti on July 30, 2018.  Tr. at 454.  Plaintiff had been discharged from the PROS Program, but was referred back again after starting treatment at the Evelyn Brandon Health Center.  Tr. at 455.

**PROS Program Records**

More than five days before Plaintiff's hearing, his counsel informed the ALJ that records were still outstanding from the PROS Program.  Tr. at 280.  These records were discussed at the hearing, and the ALJ had Plaintiff complete paperwork during the hearing to request those records.  Tr. at 91.  However, the ALJ did not take any steps to secure these PROS records, and ultimately, she determined Plaintiff's mental RFC without them.  This foundational error warrants remand.

The ALJ has a statutory duty to develop the record.  It is well established that "'the ALJ, unlike a judge in a trial, must [him]self affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'"  *Ward v. Commr of Soc. Sec.*, 2014 WL 279509 *15 (S.D.N.Y. 2014) (*citing Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996), *quoting Echevarria v. Sec'y of Health & Human Servs*., 685 F.2d 751, 755 (2d Cir.1982)).  The duty to develop the record exists, even where a claimant is represented by counsel.  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  Relatedly, an ALJ does not satisfy his or her duty by relying solely on counsel to develop the record.  *See Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016); *Grabowski v. Colvin*, No. 16-CV-6513P, 2017 WL 4296274, at *16 (W.D.N.Y. Sept. 28, 2017) (holding that the ALJ erred by failing to develop the record for a represented claimant).

As Plaintiff notes, newly amended rules promulgated under SSR 17-4p were in effect at the time of his hearing.  *See* SSR 17-4p; 20 CFR 416.1435.  These rules require a claimant to "make every effort to ensure that the administrative law judge receives all of the evidence." 20 C.F.R. §404.1435(a).  The claimant can do that by informing the ALJ about or submitting the evidence to the ALJ "no later than 5 business days before the date of the scheduled hearing."  *Id*.  However, the Agency has stated that in making these rule changes, "we did not intend to shift our burden to develop the record to claimants [and]…we have not changed our longstanding policy of assisting claimants in developing the record."  81 Fed. Reg. 90989 (emphasis added).

This Court has confirmed that the ALJ's duty to develop the record survives these rule changes.  *See Drogo v. Comm'r of Soc. Sec.*, No. 6:18-CV-6105, 2019 WL 2569599, at *4 (W.D.N.Y. June 21, 2019) ("The ALJ must 'obtain' that evidence consistent with both the regulation, § 416.1435(a), and with the ALJ's duty to develop the record"); *Candelaria o/b/o J.L.G.L. v. Saul*, No. 18-CV-557, 2019 WL 4140937, at *5 (W.D.N.Y. Aug. 30, 2019).  If the claimant informs the ALJ about missing evidence, it is error for the ALJ to refuse to obtain or consider that evidence. *MacGregor v. Comm'r of Soc. Sec.*, No. 19-CV-650-LJV, 2020 WL 5814376, at *3 (W.D.N.Y. Sept. 30, 2020).

In the instant case, Plaintiff's hearing counsel informed the ALJ on February 12, 2019, that records were still outstanding from the PROS Program.  Tr. at 280.  This was thirteen days before the hearing.  There was discussion at the hearing that while these records were requested, there were multiple addresses for PROS Program.  Tr. at 54-55, 91.  The ALJ had Plaintiff sign an "827" form to allow the Agency to collect records, but also left the record open for two weeks for Plaintiff's counsel to attempt to do so as well.  Tr. at 55, 91-92.  However, when the records were not provided in two weeks, the ALJ simply closed the record and issued her decision.  This was improper.

Under the circumstances of this case, it cannot be said that the ALJ's error was harmless.  The record shows Plaintiff was receiving services as often as five days a week at various points throughout his treatment.  Tr. at 424.  This was because Plaintiff

13

needed to "work intensively on vocational goals and to continue to work on building social supports." Tr. at 482. In this regard, the PROS Program records are particularly probative of how his mental limitations impacted his ability to work. The records would also put into context the opinions of Plaintiff's treating psychiatrist, Dr. Sarakanti, which the ALJ assigned only "some weight." Tr. at 20. The Second Circuit Court of Appeals has held that it is improper to reject the opinion of a treating physician based on an incomplete record. *See Guillen v. Berryhill*, No. 16-3421, 2017 WL 4279335, at *2 (2d Cir. Sept. 27, 2017) (holding that an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record and then proceeding to carefully weigh that record). As such, the ALJ's failure to develop the record was a harmful error that warrants remand.

Accordingly, this case is remanded with instructions for the Agency to obtain Plaintiff's PROS Program records and to reassess Plaintiff's Mental RFC in light of those records. Because remand is warranted on this basis, this Court need not reach Plaintiff's remaining argument that the ALJ improperly rejected the opinion of Plaintiff's treating social workers based on form alone. The ALJ is free to address this issue in the manner she sees fit.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is hereby GRANTED, and the Commissioner's motion for

judgment on the pleadings (Dkt. No. 13) is DENIED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:    Buffalo, New York
               September 21, 2021

                                            *s/ H. Kenneth Schroeder, Jr.*
                                            **H. KENNETH SCHROEDER, JR.**
                                            **United States Magistrate Judge**